UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE CLARK, | Case No. EDCV 10-0992-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On July 16, 2010, Willie Clark ("Plaintiff" or "Claimant" or "Clark") filed a complaint seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on January 10, 2011. The parties filed a Joint Stipulation ("JS") on March 17, 2011. The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and

remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 49 year old male who alleged disability beginning January 1, 1997, claiming injuries sustained from a gunshot wound, arthritis in knees, disorders of muscle - ligament and fascia, and depression. (JS 2.) Plaintiff's claims for benefits were denied initially on August 21, 2006, and on reconsideration on June 20, 2007. (AR 9.) He filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. on August 7, 2008, in San Bernardino, California. (AR 9.) Claimant appeared and testified. (AR 9.) Claimant was represented by Counsel. (AR 9.) Vocational expert ("VE") Corinne J. Porter also testified. (AR 9.)

The ALJ issued an unfavorable decision on September 10, 2008. (AR 9-17.) The Appeals Council denied review on May 18, 2010. (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff is raising the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ's holding that the Plaintiff can perform the jobs of Sewing Machine Worker, Electronics Worker, and Small Products Assembler was proper.

2. Whether the ALJ properly considered Plaintiff's residual functional capacity.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla' . . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing

3

past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since January 1, 1997, the alleged onset date. (AR 11.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: a learning disorder and status post-gunshot wound to the right leg and left knee. (AR 11.)

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (AR 12.)

The ALJ then determined that Clark has the residual functional capacity to perform light work with the following limitations:

> The claimant can occasionally lift and/or carry 20 pounds and frequently 10 pounds; he can stand and/or walk two hours in an eight-hour work day and sit for six hours; he is limited to occasional in all posturals; he should be able to use a cane to walk; he is precluded from using ladders, ropes or scaffolds; and he is limited to unskilled work based on his learning disorder.

(AR 12-15.) In determining Plaintiff's RFC, the ALJ made an adverse credibility finding. (AR 14.) Plaintiff failed a malingering test. (AR 14, 15.)

At step four, the ALJ found that Claimant was unable to perform his past relevant work as a carpet cleaner. (AR 15.)

At step five, with the aid of VE testimony, the ALJ determined that there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (AR 16-17.) These jobs include sewing machine operator, electronics worker, and small products assembler. (AR 16.)

Hence, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 17.)

**DISCUSSION**

**I. THE ALJ'S STEP FIVE DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff challenges the ALJ's step five determination that Plaintiff can perform the jobs of sewing machine operator, electronics worker, and small products assembler. Plaintiff contends that his illiteracy precludes these jobs and that the VE was mistaken in testifying that her opinion that Plaintiff could perform these jobs was consistent with the Dictionary of Occupational Titles ("DICOT").

The Commissioner disagrees for two reasons. First, he claims that there is no inconsistency between the VE's testimony and DICOT. Second, even assuming there was an inconsistency, he asserts that any error in failing to explain the variance was harmless because the literacy requirements for the occupations identified by the VE do not differ from those of the carpet cleaner job Plaintiff performed for several years. He could no longer do his prior work because of physical impairments ("not being able to lift things"), not illiteracy. (AR 13.)

The ALJ's step five determination is not supported by substantial evidence. The ALJ decision is ambiguous about Plaintiff's level of literacy, making it impossible to determine whether Plaintiff can satisfy the language requirements of the jobs identified by the ALJ. The VE, who was asked to assume that Plaintiff was illiterate, was mistaken that her testimony did not conflict with DICOT and thus no explanation was proffered for the variance. The ALJ decision does not explain how Plaintiff, with his apparent illiteracy, could perform the DICOT language level 1 and 2 jobs identified by the VE. These errors by the ALJ and VE were not harmless.

### A. Relevant Law

DICOT raises a presumption as to job classification requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may accept vocational expert testimony that varies from DICOT, but the record must contain "persuasive evidence to support the deviation." Id. The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and DICOT. SSR 00-4p, 2000 WL 1898704, *4 (S.S.A.); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to rely on the VE or DICOT. Id. Failure to do so, however, can be harmless error where there is no actual conflict or the VE provides sufficient support to justify a variation from DICOT. Id. at 1154 n.19.

**B.     The Record Evidence**

There is evidence in the record that Plaintiff has a 12th grade education and can speak, understand, read, and write English. (AR 103, 105, 168-173, 190, 195.) He was not in special education classes. (AR 206.) The ALJ decision found that Plaintiff has at least a high school education and is able to communicate in English. (AR 16.)

At the hearing, however, Clark testified that he was in special education from the fifth grade and could not read or write. (AR 25, 168.) Perhaps based on Clark's testimony, the ALJ's hypothetical question to the VE about whether Plaintiff could perform other jobs in the national economy assumed someone with Plaintiff's RFC and "a 12th grade education but is illiterate." (AR 33.) The VE then specified the jobs of sewing machine operator, electronics worker, and products assembler. (AR 33-34.) The first two jobs are light unskilled work and the latter is sedentary unskilled work. (AR 33-34.) The VE also testified that her opinion was consistent with DICOT. (AR 34.) The ALJ repeated this finding in his decision. (AR 16.)

The ALJ decision does not state that Plaintiff is illiterate or discuss the literacy requirements of the three jobs specified by the VE in her testimony. The VE did not acknowledge any deviation from DICOT and thus did not provide any explanation for any deviation from DICOT. Nor did the ALJ in his decision.

**C.     Discussion**

The Commissioner bears the burden at step five of the sequential process to prove that Clark can perform other work in the national economy, given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). Literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability.[2] Id.; see also Elizondo v. Astrue, 2010 WL 3432261, at *6 (E.D. Cal. Aug. 31, 2010); but see Pinto, 249 F.3d at 846 n.5 (declining to

---

[2] Accordingly, Plaintiff's second argument, that the ALJ erred by omitting any reference to Plaintiff's illiteracy in the RFC that preceded step four of the sequential process, is legally meritless.

7

decide the issue). Thus, the Commissioner bears the burden of establishing that Clark is literate. Id.

Social Security regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). The regulations go on to say:

> We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

Id. A marginal education, by contrast, means 6th grade level or less, and a limited education means 7th through 11th grade. Id. § 416.946(b)(2) and (b)(3).

The Commissioner states that "the ALJ reasonably found Plaintiff's alleged illiteracy not inconsistent with an ability to perform unskilled jobs." (JS 15.) The ALJ made no such finding in his decision. The ALJ stated that the VE's testimony was consistent with DICOT (AR 16), but made no findings as to Plaintiff's literacy or ability to read and write, and did not even discuss Plaintiff's ability to read or write. The ALJ decision says that Claimant can communicate in English (AR 16) but does not say that Clark can read or write. The ALJ decision states that Plaintiff has at least a 12th grade education (AR 16) but then posed a hypothetical to the VE that assumed "[s]omebody with a 12th grade education but is illiterate." (AR 33, 31.) Plaintiff asserts that the ALJ must have found Plaintiff to be illiterate. Perhaps, but the ALJ decision does not say so explicitly and the ALJ's finding that Plaintiff has a 12th grade education and can communicate in English (AR 16) implies otherwise. There also is some evidence in the record that Plaintiff can read and write (AR 103, 105, 168-73, 190, 195), although the ALJ decision does not discuss that evidence or say that Plaintiff is literate. The ALJ decision is simply ambiguous on the issue of Plaintiff's literacy or ability to read or write. Without specifying Plaintiff's level of literacy, there is no basis for assessing whether Plaintiff can meet the language requirements of the jobs identified by the VE, nor can there be meaningful judicial review of the ALJ's step five finding.

Additionally, because the VE was asked to assume that Plaintiff was illiterate (AR 33), her testimony plainly varies from DICOT. Specifically, DICOT provides that the jobs of sewing machine operator (689.685-118) and electronics worker (726.687-010) require a language level of 2. DICOT defines language level 2 as follows:

> Reading: Passive vocabulary of 5,000 to 6,000 words per hour. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DICOT Appendix C, 1991 WL 688702 (G.P.O.)

The small products assembler job (739.687-086) requires a language level of 1. DICOT defines language level 1 as follows:

> Reading: Recognize meaning of 2,500 (two - or three - syllable) words. Read at a rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> Speaking: Speak simple sentences, using normal word order, and present and past tenses.

DICOT, Appendix C.

Someone who is illiterate obviously would be presumptively precluded from language level 1 and 2 jobs. Numerous cases have reversed the Commissioner where the ALJ failed to explain the deviation between a claimant's illiteracy and DICOT jobs requiring language

levels of 1 and 2.  Pinto, 249 F.3d at 843; Her v. Astrue, 2010 WL 3069330, at *5 (E.D. Cal. Aug. 3, 2010); Lopez v. Astrue, 2010 WL 2674432, at *4 (C.D. Cal. July 1, 2010); Guzman v. Astrue, 2010 WL 1929563, at *1 (C.D. Cal. May 10, 2010); Mkhitaryn v. Astrue, 2010 WL 1752162, at *2 (C.D. Cal. April 27, 2010); Farias v. Astrue, 2010 WL 796768, at *6 (N.D. Cal. March 5, 2010); Diaz v. Astrue, 2009 WL 176316, at *4 (C.D. Cal. Jan. 26, 2009); Mora v. Astrue, 2008 WL 5076450, at *3-*4 (C.D. Cal. Dec. 1, 2008); Turcios v. Astrue, 2008 WL 929122, at *9 (N.D. Cal. April 4, 2008).

Plaintiff appears to assume that someone who is illiterate can never perform any of these jobs.  Plaintiff's assumption is misplaced.  Massachi made clear that general descriptions of job requirements may be inapplicable in specific circumstances.  Massachi, 486 F.3d at 1153 at n.17.  Social Security regulations also say otherwise.  Rule 202(g) of the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. § 404, Subpt. P, App. 2, provides:

> While illiteracy or the ability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . .  The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs.  This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

The Ninth Circuit has ruled, "A claimant is not per se disabled if he or she is illiterate."  Pinto, 249 F.3d at 847.  Indeed, Plaintiff performed his carpet cleaner job for several years.  That job has a DICOT language level of 2 (389.664-010), the same as or higher than the language levels for the jobs specified by the VE.  Any contention that illiteracy precludes Plaintiff from all work is simply unfounded.  The VE and ALJ, however, must explain the

deviation between the limitation and the DICOT job description.  Massachi, 486 F.3d at 1153; Pinto, 249 F.3d at 847.

Thus, the VE was mistaken that her opinion that somebody illiterate could perform language level 1 and 2 jobs was consistent with DICOT.  Consequently, the VE was obliged to provide a reasonable explanation for the variance.  She did not do so and, as a result, her opinion that Plaintiff can perform other jobs in the national economy carries no weight. Massachi, 486 F.3d at 1153-54; Guzman v. Astrue, 2010 WL 1929563, at *1 (C.D. Cal. May 10, 2010).  The ALJ's decision is unsupported by substantial evidence.

The analysis, however, does not end there.  The Commissioner argues that, even if it could be said that there is a conflict between the VE's testimony and DICOT, any error in not providing a reasonable explanation was harmless.  Massachi, 486 F.3d at 1154 n.19; Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless if inconsequential to the ultimate non-disability determination).  In this case, Plaintiff was determined to be a younger individual with a 12th grade education and the ability to communicate in English.  (AR 15-16.)  He worked as a carpet cleaner for which DICOT specifies a language level of 2.  Plaintiff quit his carpet cleaner job because of physical limitations, not because he was illiterate.  (AR 13.)  The Commissioner argues that there is no reason to believe that Plaintiff is unable to perform other unskilled jobs in the national economy that require a language level of 1 or 2, even if he is illiterate.  The Commissioner specifically invokes Rule 202(g).  (JS 15, 17.)

One case specifically has rejected the Commissioner's argument as conclusory and not persuasive evidence by itself that would justify deviation from DICOT.  Mora v. Astrue, 2008 WL 5076450, at *4 (E.D. Cal. Dec. 1, 2008)  Rule 202(g) merely provides authority for variance from DICOT.  The variance still must be explained in reference to a claimant's particular limitations.  The Commissioner's argument, moreover, assumes without any basis that all level 2 jobs are the same, contrary to Rule 202(g).  No inquiry was made to determine whether Plaintiff's prior carpet cleaner job as actually performed was representative of that occupation as generally performed.   Literacy may not have been important to the carpet

cleaner job as actually performed. Plaintiff's prior job may have focused on things rather than data or people, and may not have involved as much reading or writing as generally performed. Also, without analysis of the specific jobs identified by the VE, there is no way to know whether the bulk of those jobs generally focus on things rather than data or what level of reading and writing those jobs generally require. The VE did not address these issues in her testimony. The ALJ did not make any inquiry of Plaintiff at the hearing about the extent of reading and writing that the carpet cleaner job entailed or the literacy levels of the jobs specified by the VE.

There are no findings on Plaintiff's level of literacy to permit meaningful judicial review of the ALJ's step five determination. As a result, there is no basis for saying that the VE's and ALJ's failure to explain the variance between her testimony and DICOT was harmless. The Commissioner after all had the burden to demonstrate both Plaintiff's level of literacy and how someone with Plaintiff's level of literacy can meet the language requirements of the other jobs in the national economy identified by the VE. The ALJ did not carry the Commissioner's burden on those criteria. The ALJ step five decision must be reversed for lack of substantial evidence.

On remand, the ALJ shall determine and make a finding about Plaintiff's level of literacy and ability to read and write. The ALJ shall determine whether Plaintiff's level of literacy is consistent with the jobs specified by the VE and if not obtain a reasonable explanation for the variation.

*///*

*///*

*///*

**ORDER**

IT IS HEREBY ORDERED that Decision of the Commissioner of Social Security is reversed and the case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 25, 2011

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE